**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------x  )
                                                   )
JODD READICK on behalf of himself                  )   Hon. Paul G. Gardephe, U.S.D.J.
and all others similarly situated,                 )   Civil Action No. 12-Civ-3988 (PGG)
                                                   )
                              Plaintiffs,          )
                                                   )
              v.                                   )
                                                   )
AVIS BUDGET GROUP INC. and AVIS                    )
RENT A CAR SYSTEM, LLC,                            )
                                                   )
                              Defendants.          )
---------------------------------------------------x  )

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Simon Ginsberg, Esq.
Ted McCullough, Esq.
MCCULLOUGH GINSBERG
MONTANO & PARTNERS LLP
320 East 53rd Street, Suite 100
New York, New York 10022
Main   (646) 435-0300
Direct  (646) 747-4676

*Attorneys for Plaintiff and proposed class*

Plaintiffs, consumers charged an improper fee for electronic toll collection devices ("ETDs") in their rental cars, submit this brief in opposition to Defendants' motion to dismiss.

## INTRODUCTION

Avis operates a scheme to charge unsuspecting customers a daily $2.50 "convenience fee" (in addition to actual tolls) for using an ETD installed in Defendants' rental cars[1]. A customer only needs to use the ETD once during the rental period to enjoy a subsequent daily charge, regardless of whether the customer uses the car or the ETD again. Avis did not adequately disclose this fee or the fact that it applied this fee (after a single use) to every subsequent day of the rental period.

Even though the amount may seem small,[2] this corporate practice is clearly calculated to extract significant monies over a large number of customers. As such, Avis failed to act in good faith in its dealings with Plaintiff and those similarly situated.

## STATEMENT OF FACTS

Plaintiff, a N.Y. resident, rented a vehicle from Avis in September of 2011. At the Avis desk Plaintiff was presented with Avis' standard rental document along with Avis' Terms and Conditions document ("TAC") used as a jacket to the rental document. The rental document is the only document provided to the Plaintiff that required a signature. See Exhibit A. The rental document, which was signed by Plaintiff, discloses several key terms and prices in addition to the daily charge for the car. These items included an additional fee for refueling, an agreement to waive optional insurance coverage, taxes, a higher daily rate for early return, and a prohibition

---

[1] ETD systems are used on most tolled roads, bridges and tunnels in the northeastern U.S., south to Virginia and West Virginia, and west to Illinois.

[2] Plaintiff was charged a total of $28.80 for e-Tolls of which $10 was the "convenience" fee.

on additional drivers.  In addition, the signed agreement provides for automatic billing of the Plaintiff's credit card and, the following language:

> By my signature, I acknowledge receipt of all notices which appear on this rental document.  I agree to the terms and conditions including who may drive the car, which is stated on the rental document jacket provided.

It is hardly clear that agreeing "to the terms and conditions including who may drive the car…" refers to a separate document that a reasonable person would understand to include critical price terms.[3]  See Exhibit B.  This is further made ambiguous by the singular use of the phrase "which <u>is</u> stated" - implying that the rental jacket deals with the <u>singular</u> item of "who may drive the car" and similar details.  Finally, "additional drivers" are covered in the signed document, leading a reasonable person to believe that the unsigned jacket deals with the details of what has already been agreed to in principal (in the signed document) rather than including other material terms.  While a reasonable person may understand that these details (such as what happens in the event of an accident or who may drive the car) might be in another referenced document, an average consumer would not likely understand that the TAC would include additional charges.

Furthermore, given the litany of charges and waivers specifically enumerated and initialed, no reasonable consumer or contracting party would expect to find <u>additional</u> price terms in a non-signed document loosely referenced in the signed agreement.  The rental document does not include any reference to e-Tolls or a "convenience" fee.  Since Avis knows whether the car is equipped with an ETD, Avis has the ability to disclose whether this fee will apply and could easily disclose it along with the laundry list of other charges.

---

[3] It is not Plaintiff's contention that referring to items in separate documents is *per se* unenforceable.  Rather, it is Plaintiff's position that the language and circumstances of this transaction would not lead a reasonable person to understand the costs imposed or to look to a separate unsigned document for critical price terms.

In a separate, unsigned document (the TAC) Avis hides a tortured obfuscation of a fee for e-Toll use.  Spread over multiple sections of the TAC jacket, a reasonable consumer might be able to piece together, in some way, that there is some fee to be paid - somewhere.  The sections are as follows:

> **5. Rental Charges.**  You will pay for the number of miles you drive and the period of time you rent the car….  If you use a car with automatic toll payment capability, you will pay us or our toll program administrator for all tolls incurred during your rental and all related fees, charges and penalties….
>
> **23. Collections.**  If you do no pay all amounts due under this agreement upon demand, including all charges, fees and expenses, including, without limitation, payment for loss of or damage to the car, rental charges, parking and traffic fines and penalties, toll charges, towing, storage and impoundment fees, you agree to pay a late charge of 1 ½% per month on the past due balance or the highest rate permitted by applicable law, whichever is less (collectively, "Charges").  For toll charges you will be charged the standard non-discounted fee for tolls roads as published by the toll authority plus the convenience fee of $2.50 per rental day regardless of whether you use e-Toll or not and up to $10 per week for the use of this service.  You agree to also pay any costs that we incur in seeking to collect such Charges including, without limitation, court costs and attorney's fees in addition to any administrative fees, cost recovery, insufficient funds fees and collection fees (collectively, "Costs").  If the law permits, you authorize us and our collection agent, to contact you or your employer, at your place of business about the payment of any past due Charges or Costs.  You also agree that we or our collection agent(s) may access the personal information that you provided to us in any effort to collect any Charges or Costs under this section and may use the address provided by you on the Rental Document, or in any customer profile, as the place to send any demands or collection notices. In the event that you presented a credit or debit card for payment, you understand that we may report such deficiency to an appropriate credit reporting agency and you also authorize us to share that credit and debit card information with third party collection agents and further authorize us or our collection agents to charge any amounts due to us including, but not limited to, the Charges and Costs referenced above, to that credit or debit card.

The inclusion of Section 23 in its entirety is deliberate.  The plain meaning of a "Collections" provision combined with its opening clauses (dealing with collections), could lead

3

a reasonable person to conclude that the "convenience" fee charges only apply if a customer did not pay all amounts due under the rental agreement (i.e. it was some sort of penalty).  Even reading this deliberately buried pricing term in its entirety, one could reasonably conclude that these fees apply only in the event of non-payment.  Section 5 is equally ambiguous.  A reasonable person could interpret the charge as actual tolls only - not tolls plus an additional rental charge for the ETD.  Since Defendant drafted this consumer contract, the Court should not resolve these ambiguities in Defendants' favor purely as a matter of law.

## RULE 12(b)(6) STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Dura Pharms, Inc. v. Broudo*, 544 U.S. 336, 346 (U.S. 2005).  The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

To survive a rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (U.S. 2009).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable of the misconduct alleged." *Id.* at 678.

Where a complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" as Plaintiff does here, dismissal is not appropriate.  *Id.*

Defendants spend a great deal of time asserting the general idea that unsigned collateral material may form part of an agreement.  Plaintiff does not disagree with this general point.  However, New York Law makes clear that material terms buried in ambiguous language violate both the implied covenant of good faith and fair dealing as well as N.Y. General Business Law §

4

349, and will not result in a clear meeting of the minds. As such, Plaintiff's complaint should withstand a motion to dismiss.

## ARGUMENT

A. <u>Plaintiff sufficiently pleaded a violation of N.Y. General Business Law § 349.</u>

Section 349 of the N.Y. General Business Law provides a broad remedy for consumers victimized by deceptive corporate practices. The section provides, in pertinent part, as follows:

> (a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.
>
> (h) In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

In denying defendant's motion to dismiss on both G.B.L. § 349 and breach of contract claims, the court in *Lonner v. Simon Prop. Group, Inc.*, 57 A.D.3d 100 (N.Y. App. Div. 2d Dep't, 2008), quoted Judge Graffeo, in her dissent in *Matter of Food Parade, Inc. v. Office of Consumer Affairs of County of Nassau,* 7 N.Y.3d 568, 574-575 (N.Y. 2006), as accurately describing the scope of General Business Law § 349:

> This Court has broadly construed general consumer protection laws to effectuate their remedial purposes, applying the State deceptive practices law to a full spectrum of consumer-oriented conduct, from the sale of 'vanishing premium' life insurance policies … to the provision of infertility services … We have repeatedly emphasized that General Business Law § 349 and section 350, its companion … 'apply to virtually all economic activity, and their application has been correspondingly broad … The reach of these statutes provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business

> practices which plague consumers in our State' …  "In determining what types of conduct may be deceptive practices under state law, this Court has applied an objective standard which asks whether the 'representation or omission [was] likely to mislead a reasonable consumer acting reasonably under the circumstances' … taking into account not only the impact on the 'average consumer' but also on 'the vast multitude which the statutes were enacted to safeguard--including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions' " (internal citations omitted).

In *Lonner*, plaintiff complained that the terms of a gift card dormancy fee were not adequately disclosed.  Even though the fee was, in fact, buried in the documents given to the plaintiff, the court found that the practice of having "the dormancy fees [] placed on the very last page on the back of the 10 folding 'pages' of information included with the card sleeve" was inadequate disclosure.  *Lonner* at 105.  As such, the court sustained plaintiff's claim for both breach of contract under the implied covenant of good faith and fair dealing, as well as the G.B.L § 349 claim.  *Lonner* at 109, 111.

In *Pludeman v. Northern Leasing Sys., Inc.*, 10 N.Y.3d 486 (N.Y. 2008), the New York Court of Appeals addressed the sufficiency of a fraud cause of action asserted against individually-named corporate defendants.  In *Pludeman*, a class of small business owners who had entered into lease agreements for point-of-service computer terminals asserted that defendant used:

> …deceptive practices [and] hid material and onerous lease terms.... According to plaintiffs, defendants' sales representatives presented them with what appeared to be a one-page contract on a clipboard, thereby concealing three other pages below ... Among such concealed items ... [were a] no cancellation clause[] a[nd] no warranties clause, absolute liability for insurance obligations, a late charge clause, and provision for attorneys' fees and New York as the chosen forum," all of which were in "small print" or "microprint." (*id*. at 489-490)

In sustaining the fraud cause of action, the Court noted that:

> it is the language, structure and format of the deceptive lease form and the systematic failure by the salespeople to provide each lessee a copy of the lease at the time of its execution that permits, at this early stage, an inference of fraud against the corporate officers in their individual capacity and not the sales agents... (*id.* at 493)

In the present case, Defendants' string of documents, loosely referred to at best in a signed agreement, provide inadequate disclosure of the key pricing term of the ETD. The idea that burying key pricing terms in ambiguous unsigned customer collateral is somehow proper disclosure is simply not supported by New York law. *See, e.g. Goldman v. Simon Prop. Group, Inc.*, 2008 N.Y. Slip Op. 9353 (N.Y. App. Div. 2d Dep't 2008).

Finally, in a recent unpublished decision by U.S.D.J. Jose Linares, involving a similar breach of contract and consumer deceptive practices claim, the N.J. district court denied Avis' motion to dismiss. *See Mendez v. Avis Budget Group,* No. 11-cv-6537, 2012 U.S. Dist. LEXIS 50775 (D.N.J. Apr. 10, 2012). See Exhibit C. That case involved the same provisions and convenience fees at issue in the present case. *Id.*

Since a reasonable consumer would not understand the application of the "convenience" fee, we ask this court to sustain the G.B.L. § 349 claim.

    B.    <u>Plaintiff sufficiently pleaded his breach of contract claim.</u>

"Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance … This embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract…." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (N.Y. 1995). Furthermore, in order to have a valid contract, there must be a meeting of the minds as to the terms in question. *See, e.g., Mellon Bank, N.A. v. United Bank Corp. of N.Y.*, 31 F.3d 113, 116 (2d Cir. 1994) ("[a]s

a general matter, we have held that when a contract is ambiguous, its interpretation becomes a question of fact and summary judgment is inappropriate.")

Due to the rushed nature inherent in renting a car combined with the overly complex and vague reference to the "convenience" fee, it is most likely that a contracting party would have no idea that such a fee was part of the rental agreement. *See, e.g., Sims v. First Consumers Nat'l Bank*, 303 A.D.2d 288, 290 (N.Y. App. Div. 1st Dep't 2003) ("If a fact finder concluded that the [fee] disclosure statement was not clear or conspicuous as required by [law], it could invalidate the fee provision or, alternatively, see it as a violation of the implied duty of good faith and fair dealing."); *see also Lucente v. IBM*, 310 F.3d 243, 257 (2d Cir. 2002) ("[w]hen the language of a contract is susceptible to different interpretations and 'where there is relevant extrinsic evidence of the parties' actual intent, then the contract's meaning becomes an issue of fact precluding summary judgment.'"); *Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. N.Y. 1992) ("ambiguous language [i]s that which is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person…'"); *V'Soske v. Barwick*, 404 F.2d 495, 500 (2d Cir. 1968), *cert. denied*, 394 U.S. 921 (1969) ("if essential terms are omitted from their agreement, or if some of the terms included are too indefinite, no legally enforceable contract will result.")

Presented with (and expected to sign on-the-spot) a document referencing material off-document pricing, a reasonable person would not likely understand the fee at issue, nor think to look to the collateral for such pricing. Or, as held in *Mendez* on the same contract, such person could understand the fee to apply "only for the cost of collecting an unpaid toll whenever a

8

customer breached his duty to pay for the toll himself, and not that a fee could be charged simply for the customer's use of the electronic toll payment service." *Mendez* at *15-16.[4]

While not rising to the level of outright fraud as described in *Pludeman*, similar elements exist such as the hidden nature of the material terms and rushed signing implicit in car rental situations. *See Pludeman* at 493 ("it is the language, structure and format of the deceptive lease form … that permits, at this early stage, an inference of fraud against the corporate officers in their individual capacity…."). It is worthwhile to note that the fraudulent contract terms at issue in *Pludeman* where in fact printed on the piece of paper the plaintiffs actually signed. *Id.* at 490. As such, the concept that collateral documents plus signature equals automatic enforcement of pre-printed forms is simply not the law in New York. *Id.*; s*ee also, Mendez* at *21 ("the lack of notice is sufficient to state a claim that Plaintiff's right to receive the fruits of the contract was injured. Plaintiff also provides sufficient facts supporting a bad faith finding")

Due to the ambiguity of the contract clauses, combined with the fact that a reasonable person would not expect to find additional price terms in this type of collateral paperwork, the court should not dismiss the contract claim.

  C. <u>Plaintiff sufficiently pleaded his claim for unjust enrichment.</u>

Defendant seeks to dismiss this count based on its contention that there is a valid and binding agreement. However, as we have demonstrated, the provisions of the contract are not as clear as Defendant argues. Therefore, Plaintiff has adequately pleaded the elements of unjust enrichment conferred outside the bounds of the contract.

Defendants are correct that the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery [for unjust enrichment] for

---

[4] This is consistent with the intent of the "Collections" provision in Section 23 of the Rental Jacket that the fee only applies in the event of non-payment.

events arising out of the same subject matter.  *Clark-Fitzpatrick, Inc.* v. *Long Island R.R. Co.,* 70 N.Y.2d 382, 388 (1987).  However, the existence of an express contract does not preclude recovery on the basis of unjust enrichment for services and benefits conferred outside the contract.  *Infra-Pak (Dallas), Inc. v. Carlson Stapler & Shippers Supply, Inc.,* 803 F.2d 862 (5th Cir. 1986); *United States v. Summit General Contracting Corp.,* 760 F. Supp. 1004, 1011 (E.D.N.Y. 1991); *O'Keeffe v. Bry,* 456 F. Supp. 822, 831 (S.D.N.Y. 1978).  Thus, even when a written contract exists, a plaintiff may plead, and seek to prove, both contract and unjust enrichment claims. *See, e.g., Paper Corp. of United States v. Schoeller Technical Papers, Inc.,* 742 F. Supp. 808, 812 (S.D.N.Y. 1990) ("where, as here, the existence of the contract is in dispute, [plaintiff] can plead *quantum meruit* in the alternative pursuant to Rule 8(e) [5] of the Federal Rules of Civil Procedure."); *Mendez* at *24 ("…if the Rental Agreement is found void for lack of mutual assent or unconscionability, Plaintiff may only proceed with his unjust enrichment claim…. Defendants' Motion to Dismiss Plaintiff's unjust enrichment claim is thus denied.")

Since the contract does not represent a clear meeting of the minds on the issue of the "convenience" fee, the monies taken by Defendant constitute monies had and received outside the contract.  As such, Plaintiff's claim for unjust enrichment should not fail as a matter of law.

[Remainder of Page Intentionally Left Blank]

---

[5] Fed. R. Civ. P. Section 8(e) provides "Construing Pleadings. Pleadings must be construed so as to do justice."

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss the complaint.

Dated:   New York, New York
         September 11, 2012

Respectfully Submitted,


_____/s/ Simon Ginsberg_____
Simon Ginsberg, Esq. (SG4778)
Ted McCullough, Esq. (TM7609)
**MCCULLOUGH GINSBERG**
**MONTANO & PARTNERS LLP**
320 East 53rd Street, Suite 100
New York, New York 10022
Main   (646) 435-0300
Direct  (646) 747-4676
Facsimile (646) 349-2217
sginsberg@mgpllp.com
tmccullough@mgpllp.com
*Attorneys for Plaintiff, and proposed class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of September, 2012, I caused the foregoing to be served via overnight mail in accordance with the Federal Rules of Civil Procedure, and/or the Southern District of New York's Local Rules upon the following:

Peter Gourdine
Day Pitney LLP
One Jefferson Road
Parsippany, NJ 07054-2891

                                              /s/ Simon Ginsberg
                                              Simon Ginsberg, Esq.